# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CONAN DOYLE ESTATE LTD., <br><br> Plaintiff, <br><br> v. <br><br> NANCY SPRINGER, PENGUIN RANDOM HOUSE LLC, LEGENDARY PICTURES PRODUCTIONS, LLC, NETFLIX, INC., PCMA MANAGEMENT AND PRODUCTIONS LLC, EH PRODUCTIONS UK LTD., JACK THORNE, and HARRY BRADBEER, <br><br> Defendants. | Case No. 1:20-cv-00610-KG-KK |

## FILM DEFENDANTS' MOTION TO TRANSFER
## PURSUANT TO 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), defendants Legendary Pictures Productions, LLC ("Legendary"), Netflix, Inc. ("Netflix"), EH Productions UK Ltd. ("EH Productions"), PCMA Management and Productions LLC ("PCMA"), Jack Thorne, and Harry Bradbeer (collectively, the "Film Defendants") move to transfer this action to the Central District of California.[1]

## I.    INTRODUCTION

This lawsuit arises from the previously established unlawful business practices of the plaintiff, Conan Doyle Estate Ltd. (the "Estate"), which has long demanded licensing fees – to which it is not entitled – for the use of *public domain material* relating to the literary character Sherlock Holmes.  When producers, publishers, or authors refuse to pay the Estate a licensing fee to use such public domain material, which does not belong to the Estate and is free to use, the Estate often resorts to litigation.  As the Seventh Circuit explained in *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 792 (7th Cir. 2014), the Estate demands licensing fees "for which there is no legal basis, in the hope that the 'rational' writer or publisher asked for the fee will pay it rather than incur a greater cost, in legal expenses, in challenging the legality of the demand."

The Film Defendants produced and will soon distribute the film *Enola Holmes* (the "Film").  They have refused to pay the Estate licensing fees for which there is no legal basis, and, true to form, this lawsuit followed as a result.  To ensure that litigation is as expensive and burdensome as possible, the Estate initiated this action in the District of New Mexico even though not a single party in this action – including the Estate itself – resides in this district.

---

[1] Following a good-faith request for concurrence pursuant to D.N.M. LR-Civ. 7.1(a), counsel for the Estate has informed the Film Defendants' counsel that the Estate will oppose this motion.  In addition, Penguin Random House does not oppose this motion.  *See* Affidavit of Nicolas A. Jampol ¶¶ 3-4.  Defendant Nancy Springer has not yet appeared in this action.

Legendary, which produced the Film, and Netflix, which will distribute the Film, are headquartered in Los Angeles, which is also where potential witnesses reside and where potential evidence is located. And while the other Film Defendants do not reside in Los Angeles, they have closer connections to Los Angeles than to New Mexico and have also requested a transfer to Los Angeles. Based on the Estate's own allegations, there is no substantive connection between this venue and any aspect of this case, including the parties, witnesses, documents, or alleged conduct. For these reasons, the Film Defendants respectfully request that the Court transfer this case to the Central District of California, which is the most convenient and appropriate venue for this lawsuit.

## II.     FACTUAL BACKGROUND

The Estate is a United Kingdom corporation. Compl. ¶ 5. It alleges that it owns certain intellectual property rights of the late Sir Arthur Conan Doyle, the British author who created the character Sherlock Holmes over 130 years ago, in 1887. Compl. ¶¶ 5, 16. Of the sixty Sherlock Holmes works written by Conan Doyle, the Estate alleges that ten of those works "remain under copyright protection or are within the statutory limitations period for infringement." Compl. ¶ 17. The Estate acknowledges, as it must, that "the world is free to use and adapt the characters as Conan Doyle created and developed them in his public domain Sherlock Holmes stories." Compl. ¶ 3. Regardless, the Estate has aggressively sought licensing fees for which there is no legal basis, with at least one court calling the Estate's "disreputable" business practice "a form of extortion." *Klinger*, 761 F.3d at 792.

Between 2006 and 2010, an imprint owned by Penguin Random House published the six-book series *The Enola Holmes Mysteries* (the "Book Series"), written by Nancy Springer, who is

alleged to be a resident of Florida.  Compl. ¶ 6.[2]  On January 9, 2018, it was reported that Los Angeles-based Legendary (along with Georgia-based PCMA) would produce the Film, which is adapted from the first installment of the Book Series.  Declaration of Bayan Laird ("Legendary Aff.") ¶¶ 6-7.[3]  In 2019, Legendary's affiliated entity EH Productions began filming in London, and on April 21, 2020, Los Angeles-based Netflix announced that it acquired global rights, excluding China, to distribute the Film.  *Id.* ¶¶ 8-9; Affidavit of Sean Berney ("Netflix Aff.") ¶ 5.[4]  Jack Thorne wrote the Film and Harry Bradbeer directed the Film; both are UK residents.  Thorne Aff. ¶¶ 3-4; Bradbeer Aff. ¶¶ 3-4.  The Film was developed in Los Angeles, agreements were negotiated in Los Angeles, post-production was overseen from Los Angeles, and the Film will be distributed and promoted from Los Angeles.  Legendary Aff. ¶¶ 6, 9; Netflix Aff. ¶¶ 4-5.

### III.     TRANSFER IS PROPER UNDER SECTION 1404(a)

The federal change-of-venue statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Applying this statute, a district court has discretion to decide motions to transfer according to a "case-by-case consideration of convenience and fairness."  *Montoya v. Fin. Fed. Credit, Inc.*, 872 F. Supp. 2d 1251, 1259 (D.N.M. 2012).  Moreover, Section 1404(a) "permits a 'flexible and individualized analysis,' and affords district courts the opportunity to look beyond specific narrow or rigid sets of

---

[2] https://www.penguinrandomhouse.com/series/DOE/an-enola-holmes-mystery/.
[3] https://deadline.com/2018/01/millie-bobby-brown-enola-holmes-mysteries-stranger-things-legendary-entertainment-film-deal-nancy-springer-1202239229/.
[4] https://media.netflix.com/en/press-releases/netflix-acquires-legendary-entertainments-enola-holmes-starring-millie-bobby-brown.

considerations" in ruling on a motion to transfer venue. *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Courts in this district evaluate motions to transfer under Section 1404(a) by assessing "(1) whether the case could have been brought in the other district or division; (2) whether discretionary factors weigh in favor of transfer based on the convenience of the parties and witnesses; and (3) whether transfer is in the interest of justice." *Rehburg v. Bob Hubbard Horse Transp.*, 2020 WL 619119, at *1 (D.N.M. Feb. 10, 2020) (transferring case to C.D. Cal.). Each of these considerations weighs in favor of transferring this case to Los Angeles.

### A. The Estate Could Have Filed This Action in Los Angeles

In an action where the defendants do not all reside in the same state, as in this case, venue is proper in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). While there are several places where some part of the relevant events in this case occurred, New Mexico is not one of those places. Indeed, New Mexico has no apparent connection to this case whatsoever. In contrast, there are numerous connections between Los Angeles and the allegations and defenses in this case.

The Film was produced by Legendary and will be distributed by Netflix, companies that are both based in Los Angeles. Legendary Aff. ¶¶ 4, 6; Netflix Aff. ¶¶ 4-5. The initial discussions and decisions regarding the Film took place in Los Angeles. Legendary Aff. ¶ 6. After Legendary decided to pursue the project, the primary agreements relating to the Film, including the acquisition of film rights to the Book Series and directing, writing, and producing deals relating to the Film, were negotiated from Los Angeles. *Id*. The agreements with the Book Series' author, the Film's screenwriter, PCMA, and others provide for the application of

California law and venue in Los Angeles.  *Id.* ¶ 6.  Development of the Film – including casting and creative decisions – took place largely in Los Angeles.  *Id.*  The Film was filmed in the UK, but editing and other post-production services were overseen from Los Angeles.  *Id.* ¶ 8.  The negotiations for the Film's distribution also took place in Los Angeles.  *Id.* ¶ 9; Netflix Aff. ¶ 5.  Moreover, the plaintiff in *Klinger v. Conan Doyle Estate Ltd.* – likely will be a witness regarding the Estate's misuse of its purported copyrights – resides in Los Angeles.  Legendary Aff. ¶ 11.  Accordingly, the Estate could have filed this lawsuit in Los Angeles.

### B.     The Discretionary Factors All Favor Transferring This Case.

Courts in this district may consider a variety of discretionary factors in assessing whether to transfer a case to another federal district, including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Doe v. NOSF, Inc.*, 2012 WL 6599009, *2 (D.N.M. Dec. 17, 2012) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)) (transferring case from D.N.M. to W.D. Tex. because key witnesses, documents, and other sources of proof were "more accessible" in Texas than New Mexico).  "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."  *EEOC v. Plains Pipeline, L.P.*, 2020 WL 1450547, at *3-4 (D.N.M. Mar. 25, 2020) ("The preference for a witness's attendance at trial is axiomatic," and where witnesses are located closer to transferred venue than original venue, "it is

reasonable to presume that their costs to travel to a trial [in the new venue] will be less compared to traveling to a trial in [the original venue]") (internal quotation marks and citations omitted).

### 1. The Estate's Choice of Forum Has No Significance to the Case

The only one of the discretionary factors that would favor the Estate – the plaintiff's choice of forum – is "accorded little weight where 'the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Doe*, 2012 WL 6599009, at *2 (quoting *Empl'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010)). None of the parties in this lawsuit is a resident of or headquartered in New Mexico, including the Estate itself, and the Book Series and Film do not have any particular connection to New Mexico. The Estate alleges that the Book Series was sold in New Mexico and the Film will be distributed in New Mexico, Compl. ¶¶ 6-11, but this connection applies to every other state and district in the country.[5] The Estate has selected counsel from New Mexico, but "the location of counsel is the least important of the factors to be considered when assessing a motion to transfer venue." *Rehburg*, 2020 WL 619119, at *4 (granting motion to transfer).

### 2. The Potentially Relevant Witnesses and Evidence Are Located Largely in Los Angeles

In contrast to the weak connection between this case and New Mexico, connections with Los Angeles abound. Los Angeles-based companies acquired the film rights for the Book Series, developed the Film, commissioned production of the Film, and will distribute the Film. If discovery become necessary, there are potential witnesses in Los Angeles, including corporate

---

[5] *See Seaman v. IAC/InterActiveCorp., Inc.*, 2019 WL 1474392, at *5 (E.D. Va. Apr. 3, 2019) (declining to give weight to a plaintiff's allegation that materials are available online in a particular venue because such a notion would lead to giving a plaintiff's choice of forum "significant weight in virtually any judicial district because the Internet is everywhere").

designees for Legendary, EH Productions, and Netflix, who have knowledge about the development, production, and distribution of the Film.  Legendary Aff. ¶ 4; Netflix Aff. ¶ 4.  At least one witness to the Estate's misuse of its copyright is a resident of Los Angeles County – namely, the plaintiff from *Klinger v. Conan Doyle Estate Ltd*.  Legendary Aff. ¶ 11.   While PCMA, Mr. Thorne, and Mr. Bradbeer are residents of other states or countries, it is significantly more convenient for them to come to Los Angeles, again, if that becomes necessary.  Affidavit of Robert Brown ("PCMA Aff.") ¶ 5; Thorne Aff. ¶ 4; Bradbeer Aff. ¶ 4.[6]  *See also Rehburg*, 2020 WL 619119, at *4 ("The Court finds that it is generally cheaper and easier to travel to California than Albuquerque.").  For that reason, they have all consented to – and request – transfer to Los Angeles.  *Id.*

### 3. Should the Estate Need to Enforce Any Judgment Against the Film Defendants, It Will Be More Easily Enforced in Los Angeles

In addition to the plaintiff's choice of forum and the location of witnesses and other evidence, courts consider "questions as to the enforceability of a judgment if one is obtained" in considering a motion to transfer venue.  *Doe*, 2012 WL 6599009, at *2.  The Film Defendants vigorously dispute the Estate's claims and do not anticipate the Court awarding any judgment against the Film Defendants.  Should the Estate succeed, however, any such judgment would be

---

[6] This is particularly true in the current environment, in which – as New Mexico's governor has recognized – limiting travel is of paramount concern.  *See* https://www.governor.state.nm.us/2020/08/06/state-quarantine-requirements-amended-to-accommodate-medical-family-needs/ ("Traveling for anything other than business that is absolutely essential to safety and well-being during a global pandemic is an extraordinary risk.").  As an example, the parties can take a non-stop flight to Los Angeles from any relevant location, including Atlanta, New York, and London.  There are fewer options when flying into Albuquerque.

more enforceable in Los Angeles than in New Mexico because Legendary and Netflix are at home in Los Angeles, and no defendant resides in New Mexico.  *See* Legendary Aff. ¶ 4; Netflix Aff. ¶ 4; PCMA Aff. ¶¶ 5-6; Thorne Aff. ¶¶ 4-5; Bradbeer Aff. ¶¶ 4-5.  *See also Rehburg*, 2020 WL 619119, at *4 (judgment would be easier to enforce in California, where parties resided).

### 4. Venue in Los Angeles Is More Likely to Lead to Efficient Adjudication of the Estate's Claims

Courts also look to the "relative advantages and obstacles to a fair trial," along with the "difficulties that may arise from congested dockets" and other "practical" considerations to ensure an "easy, expeditious and economical" trial.  *Doe*, 2012 WL 6599009, at *2.  Beyond the considerations regarding the parties, witnesses, and evidence described above, courts in the Central District of California handle more intellectual property claims, like this one, than any other district court in the country.  *See* https://www.uscourts.gov/statistics/table/c-3/federal-judicial-caseload-statistics/2019/03/31.  Specifically, in the twelve months ending March 31, 2019, the Central District handled 1,386 intellectual property cases, as compared to 9 such cases in this district.  *Id.*

Moreover, the District of New Mexico's "congested caseload is the subject of national attention."  *EEOC v. Plains Pipeline*, 2020 WL 1450547, at *4 ("There is no question that the District of New Mexico's congested docket will lead to difficulties in adjudicating this case in a timely manner"; granting transfer).  This also means that transferring this matter will likely result in a quicker disposition.  According to official federal judicial caseload statistics, the median time from filing to disposition in civil cases in the Central District of California is 4.9 months, compared to 9.6 months in the District of New Mexico.  *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf.  *See*

*also Rehburg*, 2020 WL 619119, at *4 (analyzing same statistics to find that court docket congestion weighed in favor of transferring action to Central District of California).

### 5. The Remaining Factors Are Not Applicable

The Estate's action is rooted in federal copyright and trademark claims and raises no question of local law or a conflict of laws. Accordingly, these factors are neutral.

Because New Mexico is not the home district of any party, the witnesses and evidence that might be relevant in this case are overwhelmingly located in Los Angeles, enforceability is more practical in Los Angeles, and adjudication in Los Angeles will be more efficient, the discretionary factors strongly weigh in favor of transferring this case.

### C. The Interest of Justice Weighs in Favor of Transfer

In deciding whether to transfer an action to a different district, courts also assess whether such a transfer would further the interest of justice. *Rehburg*, 2020 WL 619119, at *5. This consideration relates to the "efficient administration of the court system" and is "concerned with both judicial efficiency and the avoidance of conflict between coordinate courts." *Id.* In this case, as in *Rehburg*, "[t]here are no other pending cases in this district or other district involving the same issues, therefore there will not be any conflict between the court systems." *Id.* Moreover, for the reasons explained above, transferring this case to Los Angeles likely will lead to a quicker disposition. *See* Section III.B.4, *supra*.

Overall, the discretionary factors and the interest of justice weigh strongly in favor of transferring this case from the District of New Mexico.

## IV.  CONCLUSION

For the foregoing reasons, the Film Defendants respectfully request that this Court transfer the case to the United States District Court for the Central District of California.

Date: August 14, 2020          DAVIS WRIGHT TREMAINE LLP

By: /s/ Nicolas A. Jampol
Nicolas A. Jampol (CA Bar No. 244867)
Cydney Swofford Freeman (CA Bar No. 315766)
Camila Pedraza (CA Bar No. 329984)
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Email: nicolasjampol@dwt.com
cydneyfreeman@dwt.com
camilapedraza@dwt.com

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Charles K. Purcell
Post Office Box 1888
Albuquerque, NM 87103
Tel:    (505) 765-5900
Fax:   (505) 768-7395
Email: kpurcell@rodey.com

*Attorneys for Defendants Legendary Pictures Productions, LLC, Netflix, Inc., PCMA Management and Productions LLC, EH Productions UK Ltd., Jack Thorne, and Harry Bradbeer*