IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CONAN DOYLE ESTATE LTD.,

    Plaintiff,

v.                                                                Case No. 1:20-cv-00610-SMV-KK

NANCY SPRINGER, PENGUIN
RANDOM HOUSE LLC, LEGENDARY
PICTURES PRODUCTIONS, LLC,
NETFLIX, INC., PCMA MANAGEMENT
AND PRODUCTIONS LLC, EH PRODUCTIONS
UK LTD., JACK THORNE, and HARRY BRADBEER,

    Defendants.

**RESPONSE IN OPPOSITION TO FILM DEFENDANTS'**
**MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Plaintiff Conan Doyle Estate Ltd. respectfully submits this response memorandum in opposition to the Film Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

This action arises from unauthorized copying of highly original authorship in late Sherlock Holmes stories by Arthur Conan Doyle. Plaintiff Conan Doyle Estate Ltd., owner of the copyrights in these Sherlock Holmes stories, is a United Kingdom company whose only presence in the United States is in New Mexico.

That presence is significant. The Estate's only United States shareholder is also its licensing representative, Jon Lellenberg, who lives and works in Santa Fe, New Mexico. He has represented the Estate and its predecessor Dame Jean Conan Doyle for nearly forty years. The Estate's files and witnesses relating to its copyright and trademark ownership are in New Mexico. Mr. Lellenberg is also a Conan Doyle and Sherlock Holmes scholar, having written, edited, or contributed to more than twenty books in those areas. If a trial is needed, he may be a witness.

In their Answer to the Complaint, defendants have put in issue the Estate's ownership of its copyrights. Those copyrights were secured by many statutory termination notices prepared, served, and recorded from New Mexico in the late 1970s and early 1980s by Dame Jean Conan Doyle's then-counsel Saul Cohen, a partner of Sutin Thayer & Browne P.C. and a former partner of the Estate's undersigned counsel. Should questions arise as to those recaptured copyrights, Mr. Cohen is a witness on those subjects, and lives in Santa Fe, New Mexico. He is 93 and likely unable to travel to Los Angeles, particularly in the current pandemic.

The film defendants falsely accuse the Estate of frequent litigation. This lawsuit is only the second time in its existence the Estate has brought suit to enforce its copyrights. The only other such action was also in the District of New Mexico in 2015. The Complaint in that matter laid out the infringement, and under this Court's jurisdiction the matter was quickly and fully resolved. While the defendants also quote a comment by Judge Posner of the Seventh Circuit, in that case someone sued the Estate for a declaratory judgment that his forthcoming book was non-infringing—but never provided the book for an analysis of whether it did or did not infringe. Because it is difficult to use Sherlock Holmes without infringing copyrighted materials, the Estate suggested a modest permission fee. The book was never shown to be non-infringing, and in fact was never shown to any court at all; Judge Posner's comment was based on no facts about licensing other than the situation at issue.

A lawsuit should proceed in the forum chosen by the plaintiff unless that forum has no substantial connection to the events in the lawsuit. Here there is a substantial connection. Copyright infringement involves comparing the protected elements of the original works to the accused books and film to determine if copying occurred. Similarly, trademark infringement involves comparing the marks. The witnesses and facts as to the first half of the copyright

analysis—the protected elements of the original works—are in New Mexico. The other half of the analysis is the accused copying. That took place in Florida, where the author Nancy Springer lives and works, and in the United Kingdom, where the screenwriter for the accused movie lives and works. Principal photography of the movie was also done in the United Kingdom. Legendary's post-production in Los Angeles is of marginal significance to the copyright analysis, and Netflix's web-based streaming distribution even less so. At least as significant is that defendant Springer's six infringing books were published in New York by defendant Penguin Random House. A transfer of venue motion should fail when it simply shifts the burden of convenience from one party to another.

The parties are located in at least four states and two countries: the book defendants in Florida and New York, the film defendants in England and California, and the plaintiff copyright owner in New Mexico and England. There is no one place that is convenient for everyone, but New Mexico is as convenient as anywhere else. There may not be much travel with pre-trial proceedings and depositions being conducted remotely during the coronavirus pandemic, but if parties need to travel to the forum, New Mexico is easily accessible by air. Flights from some— but not all—locations may be slightly cheaper to Los Angeles, but on the ground issues such as traffic, parking, and lodging tend to be less expensive and burdensome in New Mexico, which is also less densely populated and perhaps safer in a pandemic. While a substantial part of the events giving rise to all claims in this action took place in New Mexico as set out below, California has no connection to the claims against defendants Springer and Penguin Random House. Nor does California have substantial connection to the principal copying in the movie: the screenwriting, acting, directing, and filming all took place in England. "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Employers Mutual Cas.*

*Co. v. Bartile Roofs Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (affirming denial of motion to transfer venue).

**I**
**VENUE IS CLEARLY PROPER IN NEW MEXICO**
**IN THE FIRST INSTANCE, LESS SO IN LOS ANGELES**

When all defendants do not reside in the same judicial district, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). "[V]enue can be appropriate in more than one district," and "venue is not limited to the district with the *most* substantial events or omissions." *Bartile Roofs Inc.*, 618 F.3d at 1165 (emphasis in original). The substantial events and omissions at issue in this action include the following:

- the Conan Doyle family's re-acquisition of the Sherlock Holmes copyrights through statutory terminations prepared, served, and recorded from Santa Fe, New Mexico more than forty years ago;

- the Estate's use of Arthur Conan Doyle's characters in branding resulting in common-law and registered United States trademark rights, conducted principally from Santa Fe, New Mexico;

- defendant Nancy Springer's writing her Enola Holmes novels in Florida;

- defendant Jack Thorne writing the Enola Holmes screenplay in England;

- defendants' failure to acquire licenses from New Mexico to incorporate the Conan Doyle Estate's intellectual property in its project; and

- defendants' acting, directing, and filming the infringing film in England.

The actions and omissions that gave rise to plaintiff's claim of unlawful copying of its copyrights and infringement of its trademarks took place in New Mexico, Florida, or England. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42–43 & n.6 (1st Cir. 2001) (events concerning plaintiff basis for venue). Venue is therefore appropriate in either New Mexico or Florida.

Arthur Conan Doyle's copyrights were alienated from his family after his death, but after passage of the 1976 Copyright Act his last surviving child, Dame Jean Conan Doyle, reacquired the copyrights for the family using the statutory recapture process. (Ex. A, Declaration of Jon Lellenberg ¶ 4.) The person who actually did this work was her lawyer Saul Cohen in Santa Fe, New Mexico. (*Id.*) Since then, Dame Jean and later other members of the family have worked to further the legacy of Arthur Conan Doyle, create new projects, partner with others, license intellectual property, and support others with editorial assistance, historical information, archives access, and promotion. (*Id.* ¶ 15.) Records of this work reside principally in Santa Fe, New Mexico. (*Id.* ¶¶ 10, 11.) Witnesses relating to the Estate's rights and work reside principally in Santa Fe, New Mexico, where Jon Lellenberg and retired legal counsel Saul Cohen reside. (*Id.* ¶¶ 5, 11.) The only other legal action enforcing the Estate's intellectual property was litigated in this District five years ago. (*Id.* ¶ 16.)

The decision by the film company not to acquire permissions it needed may have taken place in California, creating a basis for venue there as well. The other side of that coin is that the failure to do so, and the harm caused, occurred in Santa Fe, New Mexico where defendants should have obtained the licenses. (*Id.* ¶¶ 9, 13.) California has no connection at all to the infringement claims relating to defendant Springer's books, and is almost as far away from New York and Florida as it is possible to get in the United States.

Some of the connections the moving defendants make between the film and California are not directly connected to the basis for plaintiff's claim. Deals among the defendants, "casting and

creative decisions," and "editing and other post-production services" are not the principal acts or omissions constituting infringing copying. (Motion to Transfer at 5.)[1]

## II
## VENUE TRANSFER IS NOT APPROPRIATE
## MERELY TO SHIFT THE BURDENS OF LITIGATION TO THE PLAINTIFF

"The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Bartile Roofs*, 618 F.3d at 1167 (10th Cir. 2010) (internal quotations omitted) (affirming denial of motion to transfer venue); *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (same). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Bartile Roofs*, 618 F.3d at 1167; *Scheidt*, 956 F.2d at 965 (10th Cir. 1992); *Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1253 (D.N.M. 2013) (denying motion to transfer venue because transfer "ultimately would do little more than shift the balance of inconvenience from Defendants to Plaintiff").

### A.  Plaintiff is at Home in New Mexico

The plaintiff's choice of its home forum is accorded great deference, and likewise the plaintiff's choice of another forum that "reflect[s] rational and legitimate concerns," such as when the plaintiff is "litigating at or near [its] principal place of business or at the site of the activities at issue in the lawsuit," as long as plaintiff's chosen forum is "convenient for Plaintiff[] and is not merely a forum that is largely fortuitous." *Navajo Nation*, 918 F. Supp. 2d at 1255 *quoting Burstein*

---

[1] Venue may also be proper where "a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). While intellectual property may have no clear situs, to the extent the original copyrights are located anywhere, they are in Santa Fe, where they were recaptured and are licensed and managed. (Lellenberg Decl. ¶¶ 4, 8, 9, 13.) The trademarks are also licensed and managed in New Mexico. (*Id.* ¶¶ 8, 9, 13.) Situs of the property is accordingly not a strong basis for venue, but to the extent it is applicable, New Mexico is appropriate.

*v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992). In *Navajo Nation*, it was not clear that the plaintiff Navajo Nation's chosen forum of New Mexico was its technical "home," since the Nation overlaps multiple states and its capital is in Arizona, but it was clear that the Nation was at home in New Mexico as a practical matter, and that practical convenience weighed very heavily against venue transfer. *Id.*

The California defendants say this judicial district is not plaintiff's home forum because it is incorporated in England, but this overlooks practical reality. Most of the Estate's shareholders live in England and the company is incorporated there, but much of its work is conducted in Santa Fe, New Mexico. (Lellenberg Decl. ¶ 13.**)**

Plaintiff is a family-owned company that seeks to further the legacy of one of the world's remarkable individuals, Sir Arthur Conan Doyle. (*Id.*) Its owners are family members and one family friend, Jon Lellenberg, who has assisted in this work over many years. (*Id.*) Mr. Lellenberg has been the family's principal business representative in the United States since the 1980s. (*Id.* ¶¶ 4, 8, 9, 13.) He resides in Santa Fe, New Mexico. (*Id.* ¶ 2.) New Mexico is the principal United States place of business for the Estate. (*Id.* ¶¶ 10, 11, 13.)

New Mexico is also where the Estate's copyrights were recaptured, its trademarks were registered, and the legal side of managing its intellectual property is accomplished, and New Mexico has been the site of this work since the late 1970s. (*Id.* ¶¶ 4–5.) Saul Cohen did this work for many years, and after his retirement his colleague Benjamin Allison leads it. (*Id.* ¶¶ 4–5.) The Estate's copyright and trademark licenses have been prepared and negotiated in New Mexico for forty years. (*Id.* ¶¶ 4–5, 8–9, 13.) Accordingly, plaintiff's choice of forum is not "fortuitous" or arbitrary, but rather the choice of its home forum and base of operations.

**B.  Changing Venue to Los Angeles Would Shift Burdens to Plaintiff
    <u>But Would Not Decrease Overall Burdens to the Parties and Witnesses</u>**

Changing the venue to Los Angeles would merely shift inconvenience from some of the defendants to plaintiff.

One significant cost that would be imposed by a change in venue is local counsel. *See Bartile Roofs*, 618 F.3d at 1167 (factors for venue include "the cost of making the necessary proof; . . . all other considerations of a practical nature that make a trial easy, expeditions and economical"). Because the parties are spread out across the country and internationally, some of them will have to hire local counsel, including the book defendants and either the California defendants or the plaintiff. Due to the differences in rates between the Los Angeles and New Mexico legal markets, the overall costs for local counsel will be much less if the suit proceeds in New Mexico.

Someone will have to travel for depositions, unless depositions are taken remotely due to COVID-19 restrictions. There is no reason to assume all depositions will be taken in the forum, so the choice of venue might not significantly affect the burdens. One witness located in New Mexico, Saul Cohen, is physically unable to travel to Los Angeles, particularly during the pandemic, because he is 93 years old. (Lellenberg Decl. ¶ 6.) Defendant has not given any reason why travel to Santa Fe should be particularly difficult for any Los Angeles witness.

**C.  Merely Shifting Burdens Would Be Unjust
    <u>In Light of the Difference in Parties' Relative Resources</u>**

"A court may consider the relative means of the parties when deciding a motion to transfer venue." *Navajo Nation*, 918 F. Supp. 2d at 1259 (denying motion to transfer venue); *Victor Co., LLC v. Ortho Organizers, Inc.*, 932 F. Supp. 261, 263–64 (D. Kans. 1996) ("The burden of litigating a patent infringement case in California would weigh more heavily on [plaintiff and plaintiff's principal] than on Ortho, which is a larger company."); *Meek & Assocs. v. First Union*

*Ins. Group*, No. 99-2519-CM, 2001 U.S. Dist. LEXIS 555, *13–14 (denying motion to transfer venue). The California defendants are extremely well-financed companies. Netflix is one of the largest entertainment companies in the world. On the other hand, plaintiff is a small family business. (Lellenberg Decl. ¶¶ 2, 13, 14.) It has valuable intellectual property, but it cannot access resources that begin to compare with those of the California defendants. (*Id.* ¶ 14.) Repeated trips to Los Angeles would be an expense plaintiff would feel acutely, as would hiring local counsel in Los Angeles.

Venue should only be transferred when "the balance of interests is strongly in favor of the movant." *Navajo Nation*, 918 F. Supp. 2d at 1253. Plaintiff has a strong interest in staying in its home forum, while the burden posed to moving defendants is manageable.

**III**
**NO MAJOR WITNESSES ARE IN**
**CALIFORNIA, BUT SOME ARE IN SANTA FE, NEW MEXICO**

The main issue in this case is whether the defendants copied material protected by copyrights owned by the plaintiff. The key witnesses are the persons with knowledge of the original stories and the process of creation of the alleged copies.

One such person is Jon Lellenberg, introduced above, also a noted Holmesian scholar and a principal of the Estate. (Lellenberg Decl. ¶¶ 3, 9.) Mr. Lellenberg lives in Santa Fe, New Mexico. (*Id.* ¶ 2.) Saul Cohen, who has knowledge of the Conan Doyle family's recovery of its copyrights, also resides in New Mexico and at 93 is unable to travel long distances. (*Id.* ¶¶ 5–6.) As a non-party witness, his convenience is entitled to substantial weight. *Curtis v. Wheaton Franciscan Servs.*, No. 16 C 4232, 2016 U.S. Dist. LEXIS 150227, *16 (N.D. Ill. Oct. 31, 2016). The witnesses to the process of creation of the accused works are the screenwriter Jack Thorne, who lives in England, and author Nancy Springer, who lives in Florida. Neither is in California. If it is necessary to call employees of parties on issues of distribution, production, or damages, "it is presumed that

such witnesses will appear voluntarily," so there is not cause for concern over the availability of compulsory process. *Id.*

The analysis of trademark infringement turns on likelihood of confusion. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999) ("Likelihood of confusion forms the gravamen for a trademark infringement action."). Key factors such as "the degree of similarity between the marks," "the degree of care likely to be exercised by purchasers," and "the strength or weakness of the marks" are probably matters for expert testimony or the common sense of the Court. *Id.* Other matters are most likely established by documentary evidence. *Id.*; *Herbert v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) ("When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.").

## VI
## THE OTHER FACTORS MOVING DEFENDANTS CITE DO NOT <u>SUPPORT TRANSFER OF THIS CASE FROM NEW MEXICO TO LOS ANGELES</u>

The California defendants note that there are fewer intellectual property actions litigated in this District than in Los Angeles—but no one can question this District handles enough intellectual property actions to know what it is doing. *See Navajo Nation*, 918 F. Supp. 2d at 1260 ("[D]espite the fact that more intellectual property cases are filed in the [proposed transferee] District than here, that fact does not compel the Court to transfer, as all federal courts are presumed be equally competent in federal question cases."). In fact, this Court has handled the only other intellectual property action involving the Estate's copyrights and trademarks. (Lellenberg Decl. ¶ 16.)

The moving defendants claim that a judgment may be easier to enforce in California than New Mexico because they are located there, but the forum will not affect the enforceability of a judgment in this case. This case does not involve idiosyncratic local issues where states might deny enforcement based on conflicting public policies. The judgment will be based on federal copyright and trademark law. There is no reason to think any defendant would fail to pay any judgment of this Court, or that a California court would hesitate to enforce the judgment of this Court.

The California defendants also point to statistics showing a shorter average time from filing to disposition for cases in Los Angeles federal courts. A more useful statistic is the average time from filing to trial because that describes the Court's action rather than settlement patterns, and this District is generally faster to bring cases to trial. *See* UNITED STATES DISTRICT COURTS— NATIONAL                    JUDICIAL                    CASELOAD                    PROFILE, *https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf* (data for 2014 through 2019 show New Mexico average civil filing-to-trial time of 27.2 months, California 31.5 months). But the standard for venue transfer is not, "The fastest court wins"; rather, the standard is that the Court should take into account among all the relevant considerations any "difficulties that may arise from congested dockets." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). The statistics cited do not suggest inordinate or prejudicial difficulties arising from judicial overload. Rather, they indicate that courts in this District consistently manage cases efficiently and reach resolution in a reasonable time.

The interest of justice does not favor transfer. Transfer would turn a minimal burden on the film defendants into a significant burden on plaintiff, make the presence of a potentially key

witness impossible, inflate the cost of the litigation for all parties, and disregard plaintiff's interest in litigating in its home forum and its prerogative to be heard here.

## CONCLUSION

Wherefore, plaintiff respectfully requests that this court deny Film Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), and for such other relief as may be appropriate.

Dated:  August 28, 2020

Respectfully submitted,
BARDACKE ALLISON LLP

By:    */s/ Benjamin Allison*
Benjamin Allison
Justin Miller
Breanna Contreras
Victor Grafe III
141 E. Palace Avenue, 2d Floor
Santa Fe, NM 87501
(505) 995-8000
(505) 672-7037 (f)
ben@bardackeallison.com
justin@bardackeallison.com
breanna@bardackeallison.com
victor@bardackeallison.com

*Attorneys for Plaintiff Conan Doyle Estate Ltd.*

CERTIFICATE OF SERVICE

I, Benjamin Allison, hereby certify that I caused a true and correct copy of the foregoing

*Response to Film Defendants' Motion to Transfer* to be filed through the Court's CM/ECF system

which caused all parties and counsel entitled to receive notice to be served electronically as more

fully described on the Notice of Electronic Filing.

BARDACKE ALLISON LLP

By:  *Benjamin Allison*
     Benjamin Allison